UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUSTIN G. MITCHELL, JR.,
and LUCINDA J. MITCHELL,

          Plaintiffs,

                                             Case No. 21-10889

     v.

                                             Hon. George Caram Steeh

UNITED STATES OF AMERICA,

          Defendant.

_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS (ECF NO. 31)

     Defendant, United States of America, seeks dismissal of Plaintiffs'

complaint in this dispute involving income taxes. Because the court

concludes that it lacks subject matter jurisdiction over Plaintiffs' claims, it

will grant Defendant's motion.

BACKGROUND FACTS

     Plaintiffs Austin and Lucinda Mitchell allege that they are victims of

an unscrupulous tax preparer, who used their identities to prepare

fraudulent tax returns. They hired Damian Jackson, of Diamond Tax

Services, to prepare their tax return for 2009. Jackson filed a return in their

names for 2009 and amended returns for 2006, 2007, and 2008. These

- 1 -

returns fraudulently claimed excessively large refunds, to be directed to Jackson's address. The Mitchells contend that Jackson did not show these returns to them.

If the Internal Revenue Service (IRS) had accepted the 2008 return as filed, the refund would have been $655,233. The IRS audited the 2008 return and issued a notice on March 8, 2010, that the Mitchells may have claimed a frivolous position on their return. Ultimately, in 2012, the IRS adjusted the return to reflect their actual income and withholding, resulting in a tax of $15,056 for 2008. The IRS also assessed late return and late payment penalties and interest. The Mitchells claim that they did not receive notice of the assessments. The IRS contends that the Mitchells have not paid their 2008 income tax liability and owe $22,923.45 as of October 22, 2021.

The Mitchells' 2009 return also claimed a fraudulent refund of $326,728. The IRS audited the return, determined the amount of tax due, and assessed penalties and interest. The IRS assert that the Mitchells owe $27,888.62 in taxes, penalties, and interest for 2009 as of October 22, 2021.

In addition, in 2012 the IRS assessed frivolous return penalties against the Mitchells for the tax years 2006-2009, in the amount of

approximately $35,000 for each taxpayer. According to the IRS, these amounts have not been paid. The Mitchells clam that they did not receive notice of the audits or frivolous return penalties.

As a result of their unpaid tax liabilities, the IRS has recorded five notices of federal tax liens (NFTLs) against the Mitchells with the Wayne County Register of Deeds. These NFTLs were recorded in 2013 and 2016. The Mitchells allege that they did not receive notice of the NFTLs.

In 2011, the United States brought a civil action against Damian Jackson and his co-conspirators. Jackson was enjoined from preparing federal tax returns for others and was required to provide a copy of the order to his customers. Case No. 11-14108 (E.D. Mich.), ECF No. 30 (Permanent Injunction Order dated August 9, 2012). Jackson was also prosecuted criminally for conspiring to defraud the government. Case No. 14-20450 (E.D. Mich.). Although the timing is not clear, the Mitchells assert that they did not discover the fraudulent returns "until years after Jackson, et al. perpetrated the identity theft scheme against them." ECF No. 26 at ¶ 51.

On August 12, 2019, the Mitchells submitted an Identity Theft Affidavit, IRS Form 14039, requesting that the IRS abate "the unlawful assessments made against the Mitchells by reason of the identity theft

2e31e5f57d340

returns filed by Jackson, et al." *Id.* at ¶¶ 54-55. The IRS informed them that they should file Form 14157, Return Preparer Complaint, and Form 14157-A, Return Preparer Fraud and Misconduct Affidavit, which they did on May 6, 2020. The Mitchells allege that the IRS has not responded to their submissions.

In 2020, the Mitchells also filed their "actual" tax returns for 2008, 2009, 2010, and 2012, to replace the fraudulent tax returns filed by Jackson. ECF No. 26 at ¶¶ 61-63. They allege that they paid some of their 2008, 2009, and 2010 tax liability, as well as some of the 2008 frivolous return penalty. *Id.* at ¶ 52. The Mitchells claim a refund, alleging that these amounts were erroneously or illegally assessed.

The Mitchells filed an administrative claim with the IRS on November 30, 2020, pursuant to Treasury Regulation § 301.7432-1(f). The Mitchells asserted that the taxes, penalties, and NFTLs were unlawful and that they had suffered damages in the amount of $20,000,000. According to the Mitchells, the IRS has not responded to their administrative claim.

The Mitchells filed this action on April 21, 2021, and an amended complaint on October 5, 2021. They seek a refund for amounts erroneously assessed and collected, to quiet title, damages for failure to release the liens, and mandamus relief. They claim that their tax debt has been

certified as "seriously delinquent," which has prevented Mrs. Mitchell from obtaining a passport. The government seeks dismissal pursuant to Rules 12(b)(1) and 12(b)(6), primarily asserting that the court lacks subject matter jurisdiction over the Mitchells' claims.

LAW AND ANALYSIS

I.    Standard of Review

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion under Rule 12(b)(1), such as one based upon sovereign immunity, challenges the court's subject matter jurisdiction and consists of either a facial or factual attack:

> A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citations omitted). Although Defendant does not specify the type of attack it is asserting, the court concludes that it lacks subject matter jurisdiction based upon the allegations in Plaintiffs' complaint and attached exhibits.

II.   Count I – Refund Claim

In Count I, Plaintiffs seek a refund for taxes and penalties erroneously or illegally assessed or collected. *See* 28 U.S.C. § 1346(a)(1). Congress has waived sovereign immunity for such claims against the United States, under certain conditions. *See United States v. Dalm*, 494 U.S. 596, 601 (1990). One of the jurisdictional prerequisites to suit is the filing of an administrative claim for refund:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund

> or credit has been duly filed with the Secretary, according
> to the provisions of law in that regard, and the regulations
> of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a); *Dalm*, 494 U.S. at 601-602. In addition to filing an

administrative claim for refund, the taxpayer must also pay his full tax

liability prior to filing suit. *Flora v. United States*, 362 U.S. 145, 146 (1960)

(noting that "full payment of the assessment is a jurisdictional prerequisite

to suit"); *see also Dunlap v. Lew*, 2017 WL 9496075, at *2 (6th Cir. June 2,

2017).

Plaintiffs' complaint does not allege that they filed an administrative

claim for refund or paid their full tax liability prior to filing suit. (Their 2020

administrative claim did not seek a refund.) Plaintiffs filed an administrative

claim on December 16, 2021, after they filed their complaint on April 21,

2021, and amended complaint on October 5, 2021. This post-suit filing

does not salvage their claim, however, as an administrative claim must be

filed prior to the filing of the complaint. *See United States v. Clintwood*

*Elkhorn Min. Co.*, 553 U.S. 1, 8 (2008) ("Taxpayers seeking refunds of

unlawfully assessed taxes must comply with the Code's refund scheme

before bringing suit, including the requirement to file a timely administrative

claim."). Because Plaintiffs neither paid their full deficiency nor filed a claim

for refund prior to filing suit, their refund claim must be dismissed for lack of

jurisdiction. *See Estate of Davenport v. United States*, 736 F. Supp.2d 1087, 1091-92 (E.D. Mich. 2010) ("[I]n order to satisfy the jurisdictional requirements of § 7422(a), the taxpayer must first pay the deficiency, then file a claim for refund, and then file a refund lawsuit, in that precise order.").

## III.    Count II – Quiet Title Claim

In Count II of the complaint, Plaintiffs seek to quiet title pursuant to 28 U.S.C. § 2410, alleging that the IRS wrongfully recorded tax liens on their property. This statute provides a "limited" waiver of sovereign immunity. *Pollack v. United States*, 819 F.2d 144, 145 (6th Cir. 1987). In this regard, a "suit under 28 U.S.C. § 2410 is proper only to contest the procedural regularity of a lien; it may not be used to challenge the underlying tax liability." *Id.* Here, Plaintiffs challenge their tax liability, arguing that they should not be liable for penalties caused by the actions of their tax preparer. Because Plaintiffs' suit challenges their underlying tax liability, the court lacks jurisdiction to entertain a quiet title claim under § 2410. *Id.*; *see also McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 189 (1st Cir. 1991) ("[T]he 'pay first and litigate later' rule limits Section 2410's waiver of sovereign immunity to cases where the taxpayer contests only the procedural validity of the lien. . . . [But when the taxpayer] seeks to have

- 8 -

the lien released on the ground that he does not owe what the IRS says he

owes – the suit cannot proceed.").

Plaintiffs argue that they are contesting the procedural regularity of

the liens because they did not receive notice of the deficiency or the liens.

*See* 26 U.S.C. §§ 6303(a), 6320(a); ECF No. 26 at ¶¶ 34-41. The

gravamen of their complaint, however, is that they should not be required to

pay any assessment or penalties because they were the victims of identity

theft. As such, their complaint challenges the underlying tax liability rather

than presenting a purely procedural claim. *Cf. Wiley v. United States*, 20

F.3d 222, 224 (6th Cir. 1994) (failure to send notices cognizable when

§ 2410 quiet title suit involved seizure and sale of property and when

taxpayer did not contest underlying tax liability); *Aqua Bar & Lounge, Inc. v.*

*U. S. Dep't of Treasury Internal Revenue Serv.*, 539 F.2d 935, 939-40 (3d

Cir. 1976) ("[Section] 2410 constitutes a waiver of sovereign immunity to a

suit brought by a taxpayer against the United States which challenges the

validity of a federal tax lien and sale *so long as the taxpayer refrains from*

*contesting the merits of the underlying tax assessment itself*.") (emphasis

added); *Schmidt v. King*, 913 F.2d 837, 839 (10th Cir. 1990), *holding*

*modified by Guthrie v. Sawyer*, 970 F.2d 733 (10th Cir. 1992) ("Typically, a

taxpayer with a valid quiet title action will admit any assessed taxes are

due."); *Follum v. United States*, 199 F.3d 1322 (2d Cir. 1999) (table) ("[B]ecause Follum seeks to invalidate the underlying tax assessments completely, and permanently to free himself of liability for the taxes owed, rather than to dispute issues like the mere timing of the assessment, his claim must be characterized as substantive.").

Plaintiffs' allegations regarding the lack of notice, moreover, do not state a claim. The IRS is obligated to send notices of assessments and liens to a taxpayer's "last known address" as defined by 26 C.F.R. § 301.6212-2, which is "the address that appears on the taxpayer's most recently filed and properly processed Federal tax return." *Id. See* 26 U.S.C. §§ 6303(a), 6320(a). Although Plaintiffs assert that they did not receive the notices, they do not allege that the IRS failed to send notices to their last known address. *See Wiley*, 20 F.3d at 224 ("The only requirement is that the IRS send the notice of deficiency by certified or registered mail to the taxpayer's last known address; actual receipt of the notice is not necessary."). Rather, they admit that the IRS sent notice to the address provided by their tax preparer on their tax return and they fail to articulate why this address does not qualify as a last known address under the regulations. ECF No. 26 at ¶ 30, 36, 40 ("The IRS sent all of its notices concerning the audit and consequent assessment not to the Mitchells, but

to an address of Jackson, et al. *under which the identity theft tax return was filed*.") (emphasis added). *See* 26 C.F.R. § 301.6212-2 ("[A] taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address."). Plaintiffs have not alleged that the IRS knew or should have known that the address to which it sent notices was not their "last known address" or that it was otherwise incorrect.

Further, the alleged lack of notice of the filing of the NFTLs does not affect the validity of the liens. According to Treasury Regulation § 301.6320-1, "[t]he validity and priority of a NFTL is not conditioned on notification to the taxpayer pursuant to section 6320. Therefore, the failure to notify the taxpayer concerning the filing of a NFTL does not affect the validity or priority of the NFTL." 26 C.F.R. § 301.6320-1.

To the extent Plaintiffs' quiet title claim could be construed as presenting a purely procedural challenge, therefore, it fails to state a claim. Plaintiffs do not allege that the IRS failed to send notice of their tax liability, but that the notices were sent to the address that was provided on their tax return. Plaintiffs do not identify a failure on the part of the IRS, but fraud

attributable to their tax preparer. Thus, Count II is subject to dismissal

under Rule 12(b)(1) and (6).

IV.   Count III – Damages for Failure to Release Liens

In Count III of the complaint, Plaintiffs seek damages for the IRS's

failure to release the tax liens. Pursuant to 26 U.S.C. § 7432(a):

> If any officer or employee of the Internal Revenue Service
> knowingly, or by reason of negligence, fails to release a
> lien under section 6325 on property of the taxpayer, such
> taxpayer may bring a civil action for damages against the
> United States in a district court of the United States.

*Id.* Section 6325 requires the IRS to release a lien that has "been fully

satisfied or has become legally unenforceable." 26 U.S.C. § 6325(a).

Plaintiffs do not allege that they have satisfied the liens by paying their tax

debt. Rather, they argue that the liens should not have been imposed

because they were based on assessments derived from fraudulent tax

returns, and they did not receive notice of the liens. In this regard, they

argue that the liens have "become legally unenforceable" under § 6325(a).

Similar to a claim under § 2410, Plaintiffs may not use § 7432(a) as a

vehicle to challenge their underlying tax liability, and any attempt to do so is

outside the statute's waiver of sovereign immunity. *PCCE, Inc. v. United

States*, 159 F.3d 425, 428 (9th Cir. 1998) ("Section 7432(a) simply was not

enacted to allow taxpayers to litigate the merits of assessments.");

- 12 -

*McMillen*, 960 F.2d at 190 (declining to "assume for jurisdictional purposes that the assessment is 'legally unenforceable' by virtue of the McMillens' allegation that they do not owe the IRS any money"); *Laukus v. United States*, 691 F. Supp.2d 119, 131 (D.D.C. 2010) ("Laukus's claims are actually an attack on the validity of the tax assessments against him and therefore are not encompassed by the waiver of sovereign immunity in § 7432.").

As one court explained, "[t]axpayers seeking to challenge the validity of their tax assessments must do so according to the proper statutory procedures for doing so, such as petitioning for a redetermination in Tax Court or filing a refund action under 26 U.S.C. § 7422." *Laukus*, 691 F. Supp.2d at 131. A taxpayer may not "use the damages provision in § 7432 to circumvent the tax code's procedures for protesting his assessment." *Id.*; *see also McMillen*, 960 F.2d at 190 (taxpayers may not "circumvent the refund action process by litigating the merits of the assessments against them in the collateral setting of a suit for damages allegedly caused by the IRS' refusal to release the liens on their property"). Although the Mitchells disclaim any challenge to their assessments in their briefing, they do not admit their underlying tax liability in their complaint and challenge it by requesting abatement of the taxes and penalties assessed. ECF No. 26 at

¶¶ 8, 25, 29-31, 36, 46-47, 52-55, 70, 104; *see also* ECF No. 26-2 at PageID 326 (administrative claim requesting that the IRS "reverse ab initio the assessments of taxes and penalties unlawfully made against them"). Because the essence of the Mitchells' claim is a challenge to their tax liability, the court lacks subject matter jurisdiction over their § 7432 claim.

Further, Plaintiffs have not alleged that the IRS has made an actual or constructive finding that the liens were satisfied or legally unenforceable, to trigger their release under Section 6325(a). The statute provides that the "Secretary shall issue a certificate of release of any lien" within 30 days after the "*Secretary finds* that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable." 26 U.S.C. § 6325(a)(1) (emphasis added). "Stated differently, 'it is the IRS, not the taxpayer, who must make the determination required by section 6325.'" *Bloom v. United States*, 220 F. Supp.2d 382, 386 (M.D. Pa. 1999) (citation omitted). If the Secretary does not make an actual finding of unenforceability, a finding will be deemed to have been made on "[t]he date on which such district director receives a request for a certificate of release of lien in accordance with § 401.6325– 1(f), together with any information which is reasonably necessary for the district director to conclude that the lien has been fully satisfied or is legally

unenforceable." 26 C.F.R. § 301.7432-1.[1] *See also Bloom*, 220 F. Supp.2d at 386-88.

Here, Plaintiffs do not allege either that the Secretary made an actual finding of unenforceability, or that they submitted a request for a certificate of release of the liens. Their administrative claim expressly states that they did not make a request for the release of the liens. ECF No. 26-2 at PageID 323.[2] As such, Plaintiffs have not stated a claim that the IRS knowingly or negligently failed to release the liens under § 6325(a).

Moreover, the failure to request the release of the liens, a prerequisite to a proper administrative claim, means that Plaintiffs also failed to exhaust their administrative remedies pursuant to § 7432(d)(1). "[T]he statutory and regulatory scheme described above requires that the taxpayer first make a request under section 6325 that the tax lien be released, and if the lien is not released in a timely manner, file an administrative claim for damages." *Bloom*, 220 F. Supp.2d at 388 (plaintiff failed to exhaust administrative

---

[1] Section 401-6325-(f) was replaced by 26 C.F.R. § 301.6325-1, which provides that a "request for a certificate of release with respect to a notice of Federal tax lien shall be submitted in writing to the appropriate official' and "shall contain the information required in the appropriate IRS Publication." 26 C.F.R. § 301.6325-1(a)(7).

[2] Contrary to Plaintiffs' claim, they did not request release of the liens in their previous filings with the IRS. *See* ECF No. 26-2 (Identity Theft Affidavit and Return Preparer Complaint, both seeking "abatement" of frivolous return penalties and taxes).

remedies when he did not request certificate of release of lien and court therefore lacked jurisdiction over § 7432 claim for damages).

For these reasons, Plaintiffs' § 7432 claim is subject to dismissal pursuant to Rules 12(b)(1) and (6).

V.    Count IV – Mandamus

Plaintiffs seek a writ of mandamus compelling the IRS to grant them relief, including abating the assessments of taxes and penalties, refunding amounts collected, releasing liens, and rescinding the certification of seriously delinquent tax debt provided to the State Department. ECF No. 26 at ¶ 104. The court has jurisdiction over mandamus actions pursuant to 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

"The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). A "duty" means "a mandatory or ministerial obligation. If the alleged duty is discretionary or directory, the duty is not 'owed.'" *Id.* "A duty is not

'owed' unless the obligation is 'plainly defined and peremptory.'" *Id.* (citation omitted).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). The remedy of mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (citation omitted).

Plaintiffs have identified no legal authority indicating that the IRS owes them a clear, non-discretionary duty to grant the relief they are seeking. *See Maczko*, 814 F.2d at 310 (duty is not "owed" when it is "disputed or subject to various interpretations"). Absent a clear non-discretionary duty to act on the part of the IRS, the court lacks jurisdiction over Plaintiffs' mandamus claim.

## CONCLUSION

The court lacks subject matter jurisdiction over Plaintiffs' complaint, which must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, Plaintiffs have failed to state a claim upon which relief may be granted under Rule 12(b)(6). Accordingly, IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 31) is GRANTED.

It is further ORDERED that Plaintiffs' motion to file a sur-reply (ECF

No. 40) is GRANTED.

Dated:  April 7, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 7, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk